**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**ADAM STYTZER,**

                                        **Plaintiff,**

         **vs.**                                        **1:07-CV-811**
                                                         **(NAM/DEP)**

**MICHAEL J. ASTRUE,**
**COMMISSIONER OF SOCIAL SECURITY,**

                                        **Defendant.**
_____

**APPEARANCES:**                        **OF COUNSEL:**

Office of Carol S. Goldstein            Carol S. Goldstein, Esq.
P.O. Box 525
Monroe, New York 10949
*Attorneys for Plaintiff*

Richard Hartunian                       Susan Reiss, Esq.
United States Attorney for              Special Assistant U.S. Attorney
the Northern District of New York
P.O. Box 7198
100 South Clinton Street
Syracuse, New York 13261-7198
*Attorneys for Defendant*

Social Security Administration          Marla Piazza Siegel, Esq.
Office of Regional General Counsel
Region II
26 Federal Plaza - Room 3904
New York, New York 10278
*Attorneys for Defendant*

**Norman A. Mordue, Chief U.S. District Judge:**

### MEMORANDUM-DECISION AND ORDER

## I.    INTRODUCTION

        Plaintiff Adam Stytzer, brings the above-captioned action pursuant to 42 U.S.C. § 405(g)

of the Social Security Act, seeking review of the Commissioner of Social Security's decision to

deny his application for disability benefits ("DIB").

## II.     BACKGROUND

On November 17, 2004, plaintiff filed an application for DIB. (T. 20).[1]  Plaintiff was 34 years old at the time of the application with past work experience as a laborer/grounds worker, club manager, ski patroller and truck driver. (T. 20).  Plaintiff claimed that he became disabled on October 29, 2003 due to a back injury while working as a ground manager at a gun club.  (T. 63). On January 31, 2005, plaintiff's application was denied and plaintiff requested a hearing by an ALJ which was held on March 2, 2006. (T. 21, 257).  On July 26, 2006, the ALJ issued a decision denying plaintiff's claim for benefits. (T. 19).  The Appeals Council denied plaintiff's request for review on June 4, 2007 making the ALJ's decision the final determination of the Commissioner. (T. 4).  This action followed.

## III.    DISCUSSION

The Social Security Act (the "Act") authorizes payment of disability insurance benefits to individuals with "disabilities."   The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  There is a five-step analysis for evaluating disability claims:

> "In essence, if the Commissioner determines (1) that the claimant is
> not working, (2) that he has a 'severe impairment,' (3) that the
> impairment is not one [listed in Appendix 1 of the regulations] that
> conclusively requires a determination of disability, and (4) that the
> claimant is not capable of continuing in his prior type of work, the
> Commissioner must find him disabled if (5) there is not another type
> of work the claimant can do." The claimant bears the burden of

---

[1] "(T.)" refers to pages of the Administrative Transcript, Dkt. No. 8.

proof on the first four steps, while the Social Security
Administration bears the burden on the last step.

*Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003) (quoting *Draegert v. Barnhart*, 311

F.3d 468, 472 (2d Cir. 2002)); *Shaw v. Chater*, 221 F.3d 126, 132 (2d Cir. 2000) (internal

citations omitted).

A Commissioner's determination that a claimant is not disabled will be set aside when the

factual findings are not supported by "substantial evidence."  42 U.S.C. § 405(g); *see also Shaw*,

221 F.3d at 131.  Substantial evidence has been interpreted to mean "such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion."  *Id.*  The Court may also set

aside the Commissioner's decision when it is based upon legal error.  *Rosa v. Callahan*, 168 F.3d

72, 77 (2d Cir. 1999).

On July 26, 2006, the ALJ found at step one that plaintiff has not engaged in substantial

gainful activity since the alleged onset date. (T. 14).  At step two, the ALJ concluded that plaintiff

suffered from a spinal impairment which qualified as a "severe impairment" within the meaning

of the Social Security Regulations (the "Regulations").  (T. 15).  At the third step of the analysis,

the ALJ determined that plaintiff's impairment did not meet or equal the severity of any

impairment listed in Appendix 1 of the Regulations.  (T. 17).  The ALJ found that plaintiff had the

residual functional capacity ("RFC") to, "sit for a total of up to 8 hours, stand/walk for a total of 4

hours and has the ability to frequently and occasionally lift and carry items weighing up to and

including 10 pounds.  The claimant would not, however, be able to perform bending for more

than 50% of the time during a typical work day". (T. 17).  At step four, the ALJ concluded that

plaintiff did not have the residual functional capacity to perform any of his past relevant work.

(T. 18).  Relying on the medical-vocational guidelines ("the grids") set forth in the Social

Security regulations, 20 C.F.R. Pt. 404, Subpt. P, App.2, the ALJ found that plaintiff had the exertional capacity to perform the demands of the full range of sedentary work.  (T. 19). Therefore, the ALJ concluded plaintiff was not under a disability as defined by the Social Security Act.  (T. 19).

In seeking federal judicial review of the Commissioner's decision, plaintiff argues that: (1) the ALJ failed to properly apply the treating physician rule; and (2) the ALJ failed to properly assess plaintiff's credibility.  (Dkt. No. 11).

**A.     Treating Physician Rule**

Plaintiff argues that the ALJ erred in failing to give weight to the opinions of plaintiff's treating physician, John Handago, M.D.  Plaintiff also claims that the ALJ should have afforded weight to the opinion of John M. King, M.D., the consultative examiner who conducted an orthopedic evaluation of plaintiff at the request of the agency. (Dkt. No. 11, p. 16).

Under the Regulations, a treating physician's opinion is entitled to "controlling weight" when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with substantial evidence in [the] case record."  20 C.F.R. § 404.1527(d)(2); *see also Rosa*, 168 F.3d at 78-79; *Schisler v. Sullivan*, 3 F.3d 563, 567 (2d Cir. 1993).  An ALJ may refuse to consider the treating physician's opinion controlling only if he is able to set forth good reason for doing so.  *Barnett v. Apfel*, 13 F.Supp.2d 312, 316 (N.D.N.Y. 1998).  "Failure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." *Peralta v. Barnhart*, 2005 WL 1527669, at *10 (E.D.N.Y. 2005) (remanding case where the ALJ failed to explain the weight, if any, assigned to the treating physician's opinions) (citing *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999)).  The opinion of a

treating physician is not afforded controlling weight where the treating physician's opinion contradicts other substantial evidence in the record, such as the opinions of other medical experts. *Williams v. Comm'r of Soc. Sec.*, 236 F.App'x 641, 643-44 (2d Cir. 2007); *see also Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) (citing 20 C.F.R. § 404.1527(d)(2)).  The less consistent an opinion is with the record as a whole, the less weight it is to be given.  *Stevens v. Barnhart*, 473 F.Supp.2d 357, 362 (N.D.N.Y. 2007); *see also Otts v. Comm'r of Soc. Sec.*, 249 F.App'x 887, 889 (2d Cir. 2007) (an ALJ may reject such an opinion of a treating physician "upon the identification of good reasons, such as substantial contradictory evidence in the record").

When an ALJ refuses to assign a treating physician's opinion controlling weight, he must consider a number of factors to determine the appropriate weight to assign, including:

> (I) the frequency of the examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.

20 C.F.R. § 404.1527(d)(2).

A treating physician's belief that a plaintiff is "totally disabled" is irrelevant since that determination is reserved for the Commissioner.  *Taylor v. Barnhart*, 83 F.App'x 347, 349 (2d Cir. 2003); *Gladden v. Comm'r of Soc. Sec.*, 337 F.App'x 136, 138 (2d Cir. 2009).  While the final responsibility for deciding issues relating to disability is reserved to the Commissioner, the ALJ must still give controlling weight to a treating physician's opinion on the nature and severity of a plaintiff's impairment when the opinion is not inconsistent with substantial evidence.  *See Martin v. Astrue*, 337 F.App'x 87, 89 (2d Cir. 2009).

When an ALJ's decision is not fully favorable to a claimant, the ALJ must provide specific reasons for the weight given to each treating source's medical opinion, supported by evidence in the case record, and must state the reasons for that weight. *See* Social Security Ruling ("S.S.R.") 96-2p; *see also Richardson v. Barnhart*, 443 F.Supp.2d 411, 424 (W.D.N.Y. 2006) (holding that even if the ALJ had properly discounted the treating physician's medical opinion, he still failed to properly explain the weight he gave to other physician opinions in the record); *see also Lunan v. Apfel*, 2000 WL 287988, at *5 (N.D.N.Y. 2000) (holding that remand was necessary because the ALJ did not discuss the weight that she assigned or the specific reasons for assigning such weight to the opinions of treating physicians).

On November 10, 2003, plaintiff was evaluated by John P. Handago, M.D., an orthopedic surgeon. (T. 105). Plaintiff complained of lower back pain as a result of an injury at work. Dr. Handago examined plaintiff and found a diminished range of motion in the lumbar spine with spasms. (T. 106). An x-ray revealed no evidence of fracture, spondylolisthesis or spondylolysis.[2] (T. 116). Dr. Handago diagnosed plaintiff with "lumbar HNP" and prescribed Mobic, Flexeril, Ultracet and physical therapy.[3] From December 2003 through January 2006, plaintiff treated once a month with Dr. Handago. During that time, Dr. Handago continually noted that plaintiff's range of motion was diminished, spasms were present and that he exhibited positive straight leg

---

[2] Spondylolisthesis is forward displacement of one vertebra over another, usually of the fifth lumbar over the body of the sacrum, usually due to a developmental defect. *Dorland's Illustrated Medical Dictionary*, 1779 (31st ed. 2007). Spondylosis is a degenerative spinal change due to osteoarthritis. *Id*. at 1780.

[3] HNP is an abbreviation for herniated nucleus pulposus. http://www.medilexicon.com (last visited May 13, 2010). Mobic is a nonsteroidal anti-inflammatory drug used in the treatment of osteoarthritis; administered orally. *Dorland's*, at 1189. Flexeril is a skeletal muscle relaxant for relief of muscle spasms. *Id*. at 465, 725. Ultracet is an opioid analgesic used for the treatment of moderate to moderately severe pain following surgical procedures and oral surgery; administered orally. *Id*. at 1755.

raises bilaterally.  (T. 105).  Dr. Handago consistently diagnosed plaintiff with "lumbar hnp" and

at the end of each office notation, Dr. Handago indicated that plaintiff was "totally disabled".  At

Dr. Handago's request, plaintiff had an MRI of his lumbar spine on April 23, 2004.  (T. 115).

The film revealed mild degenerative disc disease at L4-5 and L5-S1 as indicated by disc

dessication and bulging.  (T. 117).  The report indicates, "no disc herniations".  (T. 117).  On

June 17, 2004, an EMG of plaintiff's lumbar spine revealed no evidence of lumbosacral

radiculopathy or neuropathy.[4] (T. 120).

On August 12, 2004, Dr. Handago completed an evaluation for the New York State

Education Department Vocational & Educational Services for Individuals with Disabilities.  (T.

134).  Dr. Handago opined that plaintiff could stand/walk for 1 - 4 hours in an 8 hour day; sit for

1 - 3 hours in an 8 hour day; occasionally lift/carry 20 pounds or less and occasionally squat and

crawl. (T. 134).  Dr. Handago concluded that plaintiff had no restrictions in grasping, pulling,

pushing or fine manipulation but plaintiff could never bend, work at heights or climb. (T. 134).

Dr. Handago opined that plaintiff could not return to his prior occupation as he could only sit,

stand or walk for 30 minutes without changing positions. (T. 134).

On December 13, 2004, plaintiff was examined by Steven K. Jacobs, M.D., a

neurosurgeon, at the request of Dr. Handago. (T. 155).  Dr. Jacobs diagnosed plaintiff with

discogenic disease, degenerative disease and radiculopathy.  Dr. Jacobs recommended a

discogram and suggested surgery as plaintiff, "has not improved with conservative care". (T.

155).  On February 28, 2005, Dr. Jacobs re-evaluated plaintiff and found his examination

---

[4] Radiculopathy is a disease of the nerve roots.  *Dorland's* at 1595.  Neuropathy is a functional disturbance or pathological change in the peripheral nervous system, sometimes limited to noninflammatory lesions as opposed to those of neuritis; the etiology may be known or unknown. Known etiologies include complications of other diseases (such as diabetes). *Id.* at 1287.

"unchanged". (T. 154).  Dr. Jacobs noted that the discogram was positive.[5]  (T. 154).

On January 15, 2005, John M. King, M.D. performed an orthopedic evaluation of plaintiff at the request of the agency. (T. 146).  Dr. King noted that plaintiff's straight leg raising caused pain at 50 degrees, the lumbar spine was tender and plaintiff experienced decreased sensation in his left lower extremity. (T. 147).  Dr. King diagnosed plaintiff with lumbar spine sprain and lumbosacral disc disease and opined that plaintiff should avoid lifting over 20 pounds and should refrain from repetitive bending or stooping. (T. 147).

On April 4, 2005, plaintiff sought treatment with Jeffrey M. Spivak, M.D., an orthopedic surgeon.  (T. 163).  Plaintiff was referred by a friend for "surgical consideration". (T. 163).  Dr. Spivak reviewed several radiographs including x-rays, the MRI and the discogram.  Dr. Spivak noted that the discogram confirmed a central protrusion. (T. 164).  Based upon plaintiff's diagnostic tests and physical examination, Dr. Spivak concluded that plaintiff was a candidate for spinal surgery.  (T.164).  In October 2005, plaintiff underwent spinal surgery at the Hospital for Joint Diseases in New York City. (T. 158).  During his first follow up examination, Dr. Spivak noted that x-rays showed excellent positioning of implants.  Dr. Spivak recommended aggressive physical therapy. (T. 207).

On January 6, 2006, plaintiff appeared for a three month follow up examination with Dr. Spivak and allegedly stated that he was "quite pleased with his surgical result".  Dr. Spivak noted that x-rays showed excellent mobility and opined that plaintiff should continue with physical therapy and concluded that plaintiff had, "excellent result to date". (T. 205).

---

[5] A discogram is a radiograph of an intervertebral disk.  *Dorland's* at 553.  The discogram was allegedly positive at L4-L5 and L5-S1.  The record does not contain a copy of the report or any indication where or when the examination was conducted.

In January 2006, plaintiff had his last visit with Dr. Handago.  At that time, Dr. Handago noted that despite having surgery, plaintiff still exhibited diminished range of motion and minimal positive straight leg raising on the left. (T. 194).  Dr. Handago diagnosed plaintiff with lumbar HNP and concluded that plaintiff was "totally disabled".

On February 14, 2006, Dr. Handago completed a Medical Source Statement for Work-Related Activities (Physical).  Dr. Handago opined that plaintiff could occasionally lift/carry ten pounds or less; frequently lift/carry less than ten pounds; sit for less than 6 hours in an 8 hour workday; and occasionally climb, balance, kneel and crouch but never crawl or stoop. (T. 229-230).  Dr. Handago noted that plaintiff was limited in his ability to push/pull with all extremities. (T. 230).  Dr. Handago also concluded that plaintiff could stand/walk for less than two hours in an eight hour workday.[6]  (T. 229).  Dr. Handago based his conclusions upon a discogram that allegedly revealed herniations at L4-L5 and L5-S1 and recent disc replacement surgery. (T. 230).

On April 4, 2006, Dr. King re-evaluated plaintiff. (T. 247).  Dr. King noted that plaintiff underwent a two level Prodisc disc arthroplasty at L4-5 and L5-S1 with discectomy and excision which, "helped somewhat".  Plaintiff also received physical therapy and injections which gave him "temporary relief". (T. 247).  Dr. King reviewed Dr. Spivak's records and examined plaintiff. The results of Dr. King's physical examination were largely unchanged from his prior examination.  Dr. King was unable to test forward flexion as plaintiff "is not allowed to bend forward per his surgeon". (T. 248).  Dr. King diagnosed plaintiff with lumbosacral disc disease and opined that he should not lift over 10 pounds and could not engage in repetitive bending, stooping, flexion or extension. (T. 248).  Dr. King also opined that plaintiff could sit for less than

_____

[6] The form indicates that, "if less than two hours selected provide explanation of the precise limitation". (T.229).  Dr. Handago did not provide a further explanation.

6 hours in an 8-hour workday and that plaintiff was limited in pushing/pulling with his lower extremities. (T. 249).  Dr. King concluded that plaintiff could never climb, balance, kneel, crouch, crawl or stoop.  (T. 249).

### 1.    ALJ's analysis of Dr. Handago's opinion

Plaintiff claims that the ALJ erred when he failed to assign any weight to Dr. Handago's opinion.  Upon review, the Court notes that the ALJ provided only a cursory summary of Dr. Handago's treatment noting that, "[t]reating medical records from November 10, 2003 through February 14, 2006 of John P. Handago, M.D. note that claimant sustained a back injury in September 2003 while working on a machine".  The ALJ acknowledged the results of Dr. Handago's physical examinations and Dr. Handago's diagnosis.  (T. 15).  However, the ALJ did not address Dr. Handago's August 14, 2004 functional evaluation or Dr. Handago's February 14, 2006 Medical Source Statement.  Rather, the ALJ simply concluded:

> Dr. King and Dr. Handago (the treating physician) both believed that the claimant would be able to sit "less than about 6 hours" in a typical work day, but this is not determinative - especially since neither physician made any observation of any deficits in this activity.  No doubt, they relied on the subjective report of the claimant when forming their conclusions.  The Administrative Law Judge must, however, take into account the medical treating record, which reflects that the claimant never made any complaints of difficulty with "sedentary" activities, and no findings with respect thereto were made by his physicians during the course of examinations (during which the claimant was discussing treatment with his physicians).  The Administrative Law Judge believes that statements made by the claimant during examinations for treatment were more reliable than those statements he made in connection with his disability claim and thus finds that the statements he made to Dr. Spivak (the surgeon) were more reliable.

The ALJ also noted,

> The term "less than about six hours" is an imprecise term in that it

> could mean anything from "5 3/4 hours" to "2 hours".  That is why the
> Administrative Law Judge prefers to rely on the reports given by the
> claimant during the course of treating examinations. (T. 18, n. 4).

Upon a review of the record, the Court finds that the ALJ failed to apply the correct legal standard and overlooked the applicable Regulations.  The ALJ concluded that the claimant never made any complaints of difficulty with "sedentary" activities and that Dr. Handago's opinions are not supported by his treatment notes.  Dr. Handago is an orthopedic specialist who treated plaintiff over an extended period of time and issued two opinions detailing plaintiff's functional limitations.  The record contains copies of Dr. Handago's contemporaneous office notes with details of his physical examinations of plaintiff and both opinions.  However, the ALJ only stated, in conclusory fashion, that Dr. Handago's opinions were not supported by his records.  The ALJ omitted a large portion of Dr. Handago's records from the discussion.

In addition, the ALJ summarily dismissed Dr. Handago's opinion reasoning that it was inconsistent with the medical treatment record.  As an example, the ALJ cited specifically to Dr. Spivak's records.  Rather than recognizing Dr. Handago's opinion, the ALJ chose to afford "greatest evidentiary weight" to Dr. Spivak's January 6, 2006 report.  (T. 18).  That determination is not supported by substantial evidence.  Dr. Spivak treated plaintiff for nine months and did not prepare a medical source statement or any other opinion explaining plaintiff's functional limitations.  A physician's statement is not a functional analysis if it does not offer any information regarding the crucial factors necessary to determine plaintiff's residual functional capacity.  *See George v. Bowen*, 692 F.Supp. 215, 219 (S.D.N.Y.1988) (concluding that treating physicians report was not a functional analysis as it contained no assessment of plaintiff's ability to lift and carry weight); *see also Hopper v. Comm'r of Soc. Sec.*, 2008 WL 724228, at *9

(N.D.N.Y. 2008) (holding that the treating physician made many findings, but he never provided any opinions regarding the plaintiff's ability to do work-related activities nor his level of disability, thus the ALJ did not err in failing to discuss what weight should be given to the treating physician's findings as none of those findings described the plaintiff's limitations). A review of the record reveals substantial evidence that is consistent with Dr. Handago's opinions including results of diagnostic testing, Dr. Jacob's notes, and Dr. King's functional assessments.[7]

The ALJ declined to grant Dr. Handago's opinion controlling, significant or considerable weight.  While the ALJ was not compelled to assign such weight to Dr. Handago's opinions, the Regulations require the ALJ to engage in a detailed analysis and provide "good reasons" for discounting the opinions.  In this case, the ALJ neglected to conduct that analysis.  The ALJ did not cite or refer to § 404.1527 or to any of the factors set forth in the Regulations.  *See Hach v. Astrue*, 2010 WL 1169926, *10 (E.D.N.Y. 2010) (it was not clear from opinion that any weight was afforded to the treating physician's opinion which was improper without examining the factors set forth in 20 CFR § 404.1527) (citations omitted).  Indeed, the ALJ did not state what weight, if any, he assigned to Dr. Handago's opinion.   When the ALJ fails to outline and evaluate the factors set forth in the Regulations, remand is required.  *Cloutier v. Apfel*, 70 F.Supp.2d 271, 277 (W.D.N.Y. 1999).  The ALJ designated Dr. Handago as a treating physician but only provided "lip service" to the treating physician rule and did not supply "good reasons" for failing to credit Dr. Handago's opinion.  *See Hendricks v. Comm'r of Soc. Sec.*, 452 F.Supp.2d 194, 200 (W.D.N.Y. 2006).

---

[7] Although the record does not contain a copy of the discogram report, three physicians/specialists commented on the results and concluded that the test revealed the presence of a herniated disc.  Defendant has not presented any contrary evidence.

Not only did the ALJ fail to provide "good reasons" for rejecting Dr. Handago's report, the ALJ also neglected his obligation to fully develop the record.  The ALJ noted that Dr. Handago's opinion regarding plaintiff's ability to stand/walk was "imprecise".   The ALJ also stated, "[n]o doubt, [Dr. Handago] relied on the subjective report of the claimant when forming [his] conclusions".  (T. 18).  It is insufficient for the ALJ to dismiss a treating physician's opinion as "vague" without taking any steps to develop more specific information.  *See Santiago v. Massanari*, 2001 WL 1946240, at *13 (S.D.N.Y. 2001); *see also Carrier-Titti v. Astrue*, 2009 WL 1542553, at *8 (N.D.N.Y. 2009) (holding that the lack of specific findings in a treating physicians report, standing alone does not justify the ALJ's failure to credit the physicians opinion).  The ALJ has a duty, *sua sponte*, to develop the record and seek additional information from the treating physicians.  *See Santiago*, 2001 WL 1946240, at *13 (S.D.N.Y. 2001) (holding that the ALJ's statement, "clinical findings were inadequate" was conclusory).  Here, since the ALJ deemed Dr. Handago's opinion "imprecise", the ALJ should have re-contacted Dr. Handago to obtain an explanation with regard to: (1) plaintiff's functional limitations, i.e., how long plaintiff could stand/walk in an eight hour workday; and (2) the evidence, other than plaintiff's subjective complaints, that Dr. Handago considered when formulating his opinions.

While it is not clear that the ALJ was required to assign controlling weight to Dr. Handago's opinions, in light of Dr. Handago's notes, the objective testing and Dr. King's evaluation, Dr. Handago's opinions should have been, at the very least, considered.  *See Carrier-Titti*, 2009 WL 1542553, at *7.  Substantial evidence does not support the ALJ's rejection of Dr. Handago's opinions.  Upon remand, the ALJ is instructed to follow the regulations and develop the record accordingly.

###### 2.    ALJ's Analysis of Dr. King's opinion

Plaintiff argues that the ALJ erroneously ignored Dr. King's opinions.  Plaintiff claims that Dr. King's opinions are consistent with Dr. Handago's assessments and thus, his opinions are entitled to weight.

The treating physician rule does not apply to consulting doctors.  *See Jones v. Shalala*, 900 F.Supp. 663, 669 (S.D.N.Y. 1995); *see also Limpert v. Apfel*, 1998 WL 812569, at *6 (E.D.N.Y. 1998).   However, where the ALJ fails to give controlling weight to opinions from plaintiff's treating sources, the Regulations require an ALJ to explain the weight given to the opinions of state agency medical consultants.  *Duell v. Astue*, 2010 WL 87298, at *4 (N.D.N.Y. 2010) (holding that the ALJ's failure to consider the relevant factors and explain the weight afforded to the medical opinions of the consultative physicians constitutes legal error necessitating remand).  "Unless the treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist, as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for [the agency]."  20 C.F.R. § 416.927(f)(2)(ii); *see also Dioguardi v. Comm'r of Soc. Sec*., 445 F.Supp.2d 288, 295 (W.D.N.Y. 2006) (in light of the fact that the ALJ failed to afford the treating physician's opinion controlling weight, the opinion of the consultative examiner "takes on particular significance").   When the medical source statement of the consultative examiner conflicts with the ALJ's RFC assessment, the plaintiff is entitled to an express recognition from the Commissioner of the existence of a favorable medical source statement and, if the ALJ declined to accept it, the reasons for not doing

so. *Dioguardi*, 445 F.Supp.2d at 296.

In this case, the ALJ discussed Dr. King's consultative evaluations. The ALJ specifically noted the last examination in April 2006:

> Dr. King no [sic] limitations in standing/walking (even though the claimant exhibited a limp on ambulation), reaching, handling and fingering. Dr. King limited the claimant to lifting no more than 10 pounds of weight and estimated that the claimant could sit "less than six hours" in an 8-hour work day. Straight leg raising was found to be positive at 50 degrees, which is consistent with the experience of back pain; however, Dr. King noted no difficulty with the claimant's ability to sit in his narrative report. (T. 18).

The ALJ's analysis of Dr. King's opinion is legally flawed and does not comport with the Regulations. The ALJ declined to assign weight to Dr. King's opinions citing the lack of medical support and inconsistency with his own office records. However, the ALJ failed to explain the weight he assigned, if any, to Dr. King's opinion. As noted previously, the ALJ declined to afford controlling weight to the opinion of plaintiff's treating physician, Dr. Handago. Therefore, according to the Regulations, the ALJ was obligated to explain the weight he afforded to Dr. King's opinion. The ALJ's failure to consider the relevant factors and explain the weight afforded to Dr. King's opinions constitutes legal error and necessitates remand. *See Duell*, 2010 WL 87298, at *5 (citing *Richardson*, 443 F.Supp.2d at 424-25 (finding that the ALJ erred when he failed to explain the weight he gave to the opinions of consultative examining physicians, after declining to give controlling weight to the treating physician's opinions)). Dr. King opined that plaintiff could not lift over 10 pounds, could not engage in repetitive bending and could not sit for more than 6 hours. (T. 249). The ALJ concluded that plaintiff could sit for 8 hours and could bend 50 % of the time in a typical work day. The RFC determination is less limiting than Dr. King's opinion, thus the ALJ was compelled to explain why he rejected Dr. King's opinions.

Accordingly, the Court remands this matter to the ALJ to apply the proper legal standards in assessing the opinion evidence and developing the record.

**B.      Credibility**

Plaintiff argues that the ALJ made inaccurate findings with respect to plaintiff's credibility.  Specifically, plaintiff contends that the ALJ confused plaintiff with another claimant and erroneously determined that plaintiff exaggerated the extent of his medical problems. (Dkt. No. 11, p. 11-16).  The  Commissioner contends that the ALJ properly evaluated plaintiff's testimony and discussed his treatment history, medical reports and activities.  (Dkt. No. 15, p. 9).

When the evidence demonstrates a medically determinable impairment, "subjective pain may serve as the basis for establishing disability, even if such pain is unaccompanied by positive clinical findings or other 'objective' medical evidence[.]" *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).  "Objective medical evidence is evidence obtained from the application of medically acceptable clinical and laboratory diagnostic techniques, such as evidence of reduced joint motion, muscle spasm, sensory deficit or motor disruption." *Casino-Ortiz v. Astrue*, 2007 WL 2745704, at *11, n. 21 (S.D.N.Y. 2007) (citing 20 C.F.R. § 404.1529(c)(2)) .  If plaintiff's testimony concerning the intensity, persistence or functional limitations associated with her pain is not fully supported by clinical evidence, the ALJ must consider additional factors in order to assess that testimony, including: 1) daily activities; 2) location, duration, frequency and intensity of any symptoms; 3) precipitating and aggravating factors; 4) type, dosage, effectiveness and side effects of any medications taken; 5) other treatment received; and 6) other measures taken to relieve symptoms.  20 C.F.R. §§ 404.1529(c)(3)(i)-(vi), 416.929(c)(3)(i)-(vi).  The issue is not whether the clinical and objective findings are consistent with an inability to perform all

substantial activity, but whether plaintiff's statements about the intensity, persistence, or functionally limiting effects of her neck and back pain are consistent with the objective medical and other evidence. *See* Social Security Ruling 96-7p, 1996 WL 374186, at *2; *see also Cloutier*, 70 F.Supp.2d at 278 (holding that although the ALJ's decision contained a discussion of the medical evidence and a summary of the plaintiff's subjective complaints, the decision did not provide a sufficient analysis of the evidence to support the lack of credibility finding).

The ALJ retains discretion to assess the credibility of a claimant's testimony regarding disabling pain and "to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant." *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979); *Snell*, 177 F.3d at 135 (holding that an ALJ is in a better position to decide credibility). When rejecting subjective complaints of pain, an ALJ must do so "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief[.]" *Brandon v. Bowen*, 666 F.Supp 604, 608 (S.D.N.Y. 1987). If the Commissioner's findings are supported by substantial evidence, "the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain." *Aponte v. Sec'y, Dep't of Health and Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984). A reviewing court's role is merely to determine whether substantial evidence supports the ALJ's decision to discount a claimant's subjective complaints. *Aponte*, 728 F.2d at 591 (quotations and other citations omitted).

In this matter, the ALJ summarized plaintiff's testimony:

> At the hearing the claimant testified he sustained an on-the-job injury that causes him to experience substantial back pain despite taking pain medication and substantial limitations in mental functioning. The claimant also has alleged that he became so depressed after his injury that he has been unable to concentrate and get along with people in general; for example, his testimony was to the effect that he has been

17

rendered so mentally debilitated that he is unable to remember anything that he reads in the newspaper.  The claimant also testified that he suffers from a debilitating right shoulder impairment - - which has been so debilitating that he visibly grimaced from alleged pain when asked by the Administrative Law Judge to raise his right hand to take the oath.  According to the claimant, he had been rendered essentially "homebound" and "bedridden" in that he is forced to spend his entire day lying on his couch.  This was so despite having had back surgery in October 2005.  (T. 12-13).

The ALJ described his observations of plaintiff:

The claimant's expression of pain at the hearing was indicated even though he merely raised his right arm to the elbow; he was [allegedly] not able to raise his right arm overhead.  He advised the Administrative Law Judge that his right upper extremity was injured many years age [sic], but that he was still able to work despite this injury. (T. 13, n. 1).

The ALJ also noted that, "[d]espite his alleged agony, he admitted that he was able to drive 40 minutes to get to the hearing site from his home".  (T. 13, n. 2).

The ALJ found plaintiff "unreliable" reasoning:

Although the evidence documents the existence of a severe back impairment, it does not support the presence of any inability to perform some work tasks.  Rather, the positive findings reflected in the medical record suggest that the claimant has a lesser degree of symptoms and a higher degree of functioning than asserted.

In making this finding, the undersigned considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSRs 96-4p and 96-7p, but finds the description of symptoms are just not credible to the incapacitating extent alleged.  Overall, the Administrative Law Judge found the claimant to be an unreliable witness.  He greatly exaggerated the extent of his medical problems, for example, he described [] excruciating upper right extremity pain which finds no objective support in the treating record, over 20 pounds.  (T. 17-18).

The ALJ also concluded, "many of the claimant's 'non-treating statements' made during

18

the course of the hearing were clearly exaggerated (and thus not reliable).  The claimant leads a more active life than he indicated at the time of the hearing".  (T. 18).

Having reviewed the Administrative Transcript in its entirety, the Court finds that the ALJ did not properly assess plaintiff's credibility.  The ALJ went to great lengths to discuss plaintiff's "exaggerated" complaints of pain in his upper extremity.  Plaintiff claims he never made any complaints of pain in his upper extremities.  Therefore, the ALJ must have confused him with a different claimant.  Defendant did not address that argument in the Commissioner's brief.  The Court has reviewed the plaintiff's testimony and finds no reference to pain in the upper extremity.  Moreover, the medical record lacks any reference to any upper extremity injury/pain.  While the Court cannot conclude that the ALJ confused plaintiff with another claimant, there is no evidence in the record to support the ALJ's assessment of plaintiff's credibility in this regard.

The ALJ's statements do not explain the basis for the ALJ's credibility determination under 20 C.F.R. § 404.1529 or Social Security Ruling 96-7p.  The ALJ discussed the lack objective medical evidence in contrast to plaintiff's description of his limitations.  However, in addition to objective evidence, the ALJ was required to consider the factors enumerated in 20 C.F.R. § 404.1529(c)(3)(i)-(iv).  *See Perez v. Barnhart,* 440 F.Supp.2d 229, 234-235 (W.D.N.Y. 2006) (citing *Curran-Kicksey v. Barnhart*, 315 F.3d 964, 968 (8th Cir. 2003) (holding that the lack of objective medical evidence is one factor to consider in evaluating claimant's credibility)).  It is unclear from the decision whether the ALJ properly considered these factors. The ALJ did not summarize or analyze plaintiff's subjective complaints of pain.  The ALJ failed to evaluate or even discuss plaintiff's daily activities; medication; the location and severity of

pain; aggravating factors; or other treatment measures.  The ALJ cited to plaintiff's hearing testimony only as it related to his mental impairments and an inability to remember. (T. 13). The ALJ failed to cite or discuss any other portion of plaintiff's testimony.  (T. 30-48; 49-86). The Regulations specify that a claimant's statements about the intensity and persistence of pain will not be rejected solely because the available objective medical evidence does not substantiate plaintiff's statements.  *Simone v. Astrue*, 2009 WL 2992305, at *11 (E.D.N.Y. 2009) (the ALJ erroneously relied solely on the lack of objective evidence to discredit the plaintiff's symptoms and failed to comply with the regulations requirements for evaluating credibility).

Consequently, the Court is left with no basis upon which to determine whether the appropriate legal standards were applied, nor can it evaluate whether the ALJ considered the entire evidentiary record in arriving at his conclusion. *See Harrison v. Sec'y of Health and Human Servs.*, 901 F. Supp. 749, 757 (S.D.N.Y. 1995).   It is impossible to determine whether the ALJ improperly discredited plaintiff's complaints of pain on the grounds that they were not supported by objective medical evidence or because they were not supported by his medical history, diagnosis, daily activities, efforts to work and any functional limitations or restrictions caused by the pain.  *See* 20 C.F.R. § 404.1529; *see also Cloutier*, 70 F.Supp.2d at 278.  As a result, the Court remands this case for a determination of plaintiff's credibility which must contain specific findings based upon substantial evidence in a manner that enables effective review.

Finally, plaintiff argues that his good earnings record is evidence of his credibility. While "[a] claimant with a good work record is entitled to substantial credibility when claiming

an inability to work ... [w]ork history [ ] is but one of many factors to be utilized by the ALJ in determining credibility." *Marine v. Barnhart*, 2003 WL 22434094, at *4 (S.D.N.Y. 2003); *see also Schaal v. Apfel*, 134 F.3d 496, 502 (2d Cir. 1998); *Howe-Andrews v. Astrue*, 2007 WL 1839891, at *10 (E.D.N.Y. 2007) (holding that although a plaintiff with a long work history is entitled to "substantial credibility", the Commissioner may discount a plaintiff's testimony to the extent that it is inconsistent with medical evidence, the lack of medical treatment, and her own activities during the relevant period).

In the matter at hand, the ALJ noted that plaintiff's past relevant work included unskilled, "labor intensive" jobs but the ALJ did not discuss plaintiff's prior work history.  (T. 18).   Where the overall credibility assessment is not supported by substantial evidence, the ALJ's failure to take account of a plaintiff's good work history requires remand. *Cf. Rose v. Astrue*, 2010 WL 1038684, at *4 (W.D.N.Y. 2010) (holding that although there was no discussion of the plaintiff's work history, the ALJ's credibility determination was supported by substantial evidence).  On remand, the ALJ is directed to consider plaintiff's subjective complaints in light of his 12 year work history as a laborer.  (T. 82); *see Paduani v. Comm'r of Soc. Sec.*, 2010 WL 1816262, at *3 (E.D.N.Y. 2010).

Based upon the aforementioned, the Court remands this matter to the ALJ for a determination of plaintiff's credibility which must contain specific findings based upon substantial evidence in a manner that enables effective review.

## IV.   CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that the decision denying disability benefits be **REVERSED** and this

matter be **REMANDED** to the Commissioner, pursuant to 42 U.S.C. § 405(g) for further

proceedings consistent with the above; and it is further

      **ORDERED** that pursuant to Local Rule 72.3, the parties are advised that the referral

to a Magistrate Judge has been **RESCINDED**, as such, any appeal taken from this Order will be

to the Court of Appeals for the Second Circuit; and it is further

      **ORDERED** that the Clerk of Court enter judgment in this case.

      **IT IS SO ORDERED.**

Dated: September 30, 2010
      Syracuse, New York

Norman A. Mordue
Chief United States District Court Judge